IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DELOREAN MOTOR COMPANY, | § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 1:18-cv-1421 |
| v. | § § | |
| | § | **JURY TRIAL DEMANDED** |
| ELYSIAN COSMETICS, LLC, MICHAEL PUTMAN, and DAVID RODRIGUES | § § § § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Delorean Motor Company ("Delorean Motor Company" or "Plaintiff") files this Original Complaint against Defendants, Elysian Cosmetics, LLC, Michael Putman ("Putman"), and David Rodrigues ("Rodrigues") (collectively "Defendants") alleging, based on knowledge, information and belief, as follows:

## PARTIES

1. Plaintiff is a Texas Corporation having its principal place of business at 15023 Eddie Dr., Humble, Texas 77396.

2. Defendant Elysian Cosmetics, LLC is a New York limited liability company with a business address of 466 W. 149th St., Apt. 5E, New York, New York 10031.

3. On information and belief, Putman personally participates in and directs the activities of Elysian Cosmetics LLC.  *See* Exhibit 1 attached to the Declaration of Daniel Noonan ("Noonan Dec.") submitted herewith.

4. On information and belief, Rodrigues personally participates in and directs the activities of Elysian Cosmetics LLC. *See* Noonan Dec. Exhibit 1.

## NATURE OF ACTION AND JURISDICTION

5. This is an action for trademark infringement, dilution, unfair competition, and unjust enrichment under the Trademark Act of 1946, as amended, 15 U.S.C. Sec. 1051 *et. seq.* ("Lanham Act"), and for trademark infringement, dilution, unfair competition, and unjust enrichment under the laws of the State of New York.

6. This court has jurisdiction over the federal claims under Section 39 of the Lanham Act, 15 U.S.C. Sec. 1121, and Title 28 of the United States Code Sec. 1331 and 1338, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Sec. 1367(a).

7. On information and belief, Defendants regularly conduct business in New York, have a business address in New York and/or a personal residence in New York and a substantial part of the events giving rise to the acts complained of herein occurred in this District. Therefore, venue is proper in this District pursuant to 28 U.S.C. Sec. 1391 (b).

## FACTS

### *Delorean Motor Company's Trademarks*

8. Since long before Defendants committed the acts complained of herein, and continuously to the present day, the Delorean Motor Company has engaged in the business of selling DELOREAN automobiles and DELOREAN parts and restoring and repairing DELOREAN automobiles. The Delorean Motor Company has, in connection with this business, continuously used the name DELOREAN and the name DELOREAN MOTOR COMPANY to designate the source of the automobiles it sells and the restoration and repair services it provides. *See* the Declaration of Roger Dartt ("Dartt. Dec.") at ¶4.

9. Since long before Defendants committed the acts complained of herein, and continuously to the present day, the Delorean Motor Company has engaged in the business of producing and selling to the general public, either directly or through licensees, a variety of products that bear and promote the trademark DELOREAN.  These products include, but are not limited to, luggage, t-shirts, hats, belt buckles, watches, shoes, toy cars, toy flux capacitors, water bottles, tote bags, luggage tags, computer bags, vehicle tools, cleaning supplies, coffee mugs, key chains, license tag frames, holiday ornaments, flags, printed materials (posters, logo patches, maps), buyer's guides, and desktop wallpaper. *See* Dartt Dec. at ¶3.

10. Delorean plans to expand its product line to other luxury goods in an effort to retain its customers' loyalty between car purchases and promote the Delorean brand among consumers who aspire to own but cannot yet afford a luxury automobile.  Many luxury automobile makers associate their brands with fragrance or cosmetics or other non-automotive luxury products as a strategy to increase brand awareness and capture "aspirational" consumers.  *See* Dartt Dec. at ¶9.

11. Delorean Motor Company displays the DELOREAN mark on its sales and service facilities, on its website at www.delorean.com, in advertising and promotional materials and in relation to its services and through its franchisees in Florida, Washington, California, and elsewhere. *See* Dartt Dec. at ¶6.

12. Delorean Motor Company has sold millions of dollars of products and services in the U.S. under the DELOREAN mark, and has annually spent thousands of dollars advertising and promoting these products and services under the DELOREAN mark. As a result, Delorean Motor Company has developed goodwill, public recognition, and strong

rights in the DELOREAN mark, which consumers have come to know and trust as symbols of quality and value emanating from a single source, the Delorean Motor Company. *See* Dartt Dec. at ¶¶5 and 11 and Exhibit 3.

13. Accordingly, the DELOREAN mark is inherently distinctive, serving to identify and indicate to the consuming public the single source of Delorean Motor Company's products and services and to distinguish Delorean Motor Company's products and services from those of others.

14. Additionally and alternatively, as a result of Delorean Motor Company's frequent and widespread use and promotion of the DELOREAN mark on wide a variety of goods, the mark has acquired distinctiveness to designate the Delorean Motor Company's goods and services, to distinguish Delorean Motor Company's goods and services from the goods and services of others, and to distinguish the source or origin of the Delorean Motor Company's goods and services.

15. As a result of extensive and widespread use and promotion by Delorean Motor Company, the DELOREAN mark has become extremely well-known and is widely recognized by consumers in the State of New York and throughout the United States to indicate the source of Delorean Motor Company's goods and services.

16. As a result of Delorean Motor Company's extensive and widespread use and promotion of the DELOREAN mark, Delorean Motor Company has developed valuable goodwill in the DELOREAN mark.

17. The DELOREAN mark is famous. The advent of the stainless steel, gull-winged automobile that bears the DELOREAN name was a seminal moment in automotive history. The charisma and notoriety of its inventor added to the automobile's cache. If

the automobile and its name had not at that point achieved fame, they were unquestionably immortalized when in the movie BACK TO THE FUTURE, Doc Brown converted the DELOREAN automobile into a time machine.  The DELOREAN automobile has been featured in all three BACK TO THE FUTURE movies.  The movie franchise has grossed hundreds of millions of dollars in domestic box office receipts and several million dollars in DVD sales. All three movies are currently available on Amazon, iTunes, VUDU, and YouTube.  In October 2015, the BACK TO THE FUTURE 30th Anniversary trilogy was released on Blu-Ray, resulting significant notoriety for the DELOREAN brand.  As recently as January 21, 2018, CBS Sunday Morning News commemorated the 37th anniversary of the first commercial production of the DELOREAN automobile.  *See* Noonan Dec. at ¶¶4 and 8 and Exhibits 3 and 7.

18. Delorean Motor Company maintains a robust social media presence.  Delorean Motor Company's official Instagram account, @deloreanmotorco, has approximately 25,000 followers.  This Instagram account was created in 2013 and is updated monthly. Delorean Motor Company's official Facebook account, @deloreanmotorcompany, has approximately 180,000 followers and is updated monthly.  Dartt Dec. at ¶7 and Exhibit 2.

19. As a result of the DELOREAN automobile's place in automotive history, and as a result of Delorean Motor Company's extensive and widespread use and promotion of the DELOREAN automobile and the DELOREAN mark, and as a result of the DELOREAN's association with the BACK TO THE FUTURE movie franchise, Delorean Motor Company enjoys substantial and valuable goodwill in the DELOREAN mark.  Delorean Motor Company's use of the DELOREAN name in commerce is substantially exclusive.

20. Delorean Motor Company owns numerous federal trademark registrations for the DELOREAN mark and marks that include DELOREAN as an element, including the following:

| MARK | REG. NO. | DATE | GOODS OR SERVICES |
| --- | --- | --- | --- |
| DELOREAN (Stylized) | 3715283 | November 24, 2009 | Automobiles, automobile parts and accessories, namely fitted car cover, trim insignia for vehicles |
| DELOREAN (Stylized) | 3914710 | February 1, 2011 | Clothing, namely coats, jackets, shirts, hats |
| DELOREAN (Stylized) | 4895663 | February 2, 2016 | Automobile Dealerships. |
| DELOREAN MOTOR COMPANY | 4935970 | April 12, 2016 | Automobiles and structural parts. Clothing, namely coats, jackets, shirts and hats; automobile dealerships |
| DELOREAN MOTOR COMPANY | 5371356 | January 2, 2018 | Watches |
| DELOREAN (Stylized) | 5382005 | January 16, 2018 | Watches |

*See* Noonan Dec. Exhibit 4.  These registrations are valid and subsisting.  Trademark Registration Nos. 3914710 and 3715283 are incontestable.  As such, they are conclusive evidence of the validity of the mark, the registration of the mark, Delorean Motor Company's ownership of the mark, and of Delorean Motor Company's exclusive right to use the mark in commerce with the goods/services under 15 U.S.C. Sec. 1115(B).

### *Defendants' Unlawful Activities*

21. On information and belief, Defendants own or operate an office located at 466 W. 149th St. 5E, New York, New York 10031, and a website located at www.elysiancosmetics.com (the "Infringing Sites").  *See* Noonan Dec. Exhibits 1 and 5.

22. On or about July 17, 2017, long after the Delorean Motor Company had begun to use the mark DELOREAN in commerce, long after the DELOREAN mark had become famous, and long after the public had come to assume that products and services bearing the DELOREAN name had a single source, namely, the Delorean Motor Company, Defendants introduced for sale its DELOREAN line of Age-Suspending Treatment Primer, a cosmetic.

23. The infringing DELOREAN mark is prominently displayed on Defendants' website and on its products, as shown below.



24. Defendants are using the DELOREAN mark without the permission or authority of Delorean Motor Company.

25. On information and belief, Defendants are using the DELOREAN name to access and benefit from the goodwill and, particularly, the time-travel cache, associated with the Delorean Motor Company's DELOREAN mark.

26. Further evidence of Defendant's bad faith and willfulness is that on February 1, 2017, Defendants submitted to the PTO an application to register the DELOREAN mark for

cosmetics. In the application, Defendants falsely affirmed that to the best of their knowledge and belief, no other persons had the right to use the mark in commerce so as to be likely to cause confusion or mistake, or to deceive. When Defendants so affirmed, they knew that Delorean Motor Company had a right to use DELOREAN in commerce, that confusion, mistake or deception was likely and that appropriation of the DELOREAN mark's goodwill and, particularly, its time-travel associations was the goal. *See* Noonan Dec. Exhibit 6.

27. Such unlawful use will likely deceive the public into believing that Defendants are affiliated with Delorean Motor Company or that Delorean Motor Company is the source of, or exercises quality control over, the products bearing the infringing DELOREAN mark. Because Delorean Motor Company's mark and Defendants' infringing mark are identical and the DELOREAN mark is so strong and distinctive, consumers will likely mistake Defendants' infringing mark for Delorean Motor Company's registered marks. Delorean Motor Company licenses DELOREAN for use on a wide variety of goods, many of which, clothing most particularly, are complimentary to the type of product Defendants offer under the infringing DELOREAN mark.

28. Delorean Motor Company has notified Defendants of its trademark rights and has attempted to resolve this dispute with Defendants prior to filing this lawsuit. *See* Noonan Dec. Exhibit 8.

### *Effect of Defendants' Activities on Delorean Motor Company and the Consuming Public*

29. Defendants' unauthorized use of the DELOREAN mark is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties as to some affiliation, connection or association of Defendants' business with Delorean Motor Company, or as to the origin, sponsorship, or approval of Defendants' goods and services.

30. Defendants' unauthorized use of the DELOREAN mark falsely indicates to the purchasing public that Defendants, their business, and their goods and services originate with Delorean Motor Company, or are affiliated, connected, or associated with Delorean Motor Company, or are sponsored, endorsed, or approved by Delorean Motor Company, or are in some manner related to Delorean Motor Company or its goods or services.

31. Defendants' unauthorized use of the DELOREAN mark falsely designates the origin of Defendants' goods and services, and falsely or misleadingly describes and represents facts with respect to Defendants and their goods and services.

32. Defendants' unauthorized use of the DELOREAN mark on dissimilar goods is likely to cause dilution of Delorean Motor Company's famous marks within the meaning of 15 U.S.C. Sec. 1125(c).

33. By using the DELOREAN mark without Delorean Motor Company's permission, Defendants unlawfully seek to trade on and receive the benefit of goodwill they did not create, did not invest in and do not own.  By using the DELOREAN mark without Plaintiff's—its owners—permission they unlawfully seek to gain acceptance for their goods, not solely on their own merits, but on the reputation and goodwill of Delorean Motor Company, its marks, trade dress, goods, and services.

34. Defendants' unauthorized use of the DELOREAN mark removes from Delorean Motor Company the ability to control the nature and quality of goods and services provided under its marks, and places the valuable reputation and goodwill of Delorean Motor Company in the hands of Defendants, over whom Delorean Motor Company has no control.  This inability to control the quality of products that bear a name so strongly associated with Delorean Motor Company constitutes a continuing threat to the reputation of Delorean Motor

Company and to the goodwill associated with its DELOREAN mark. Unless these unfair and deceptive practices and acts of infringement, dilution, and unfair competition by Defendants are restrained by this Court, they will continue, and continue to cause irreparable injury to Delorean Motor Company and to the public, for which there is no adequate remedy at law.

35. As a result of Defendants' unauthorized use of the DELOREAN mark, Defendants are being unjustly enriched at the expense of Delorean Motor Company and the public.

### *Willful Nature of Defendants' Wrongful Acts*

36. On information and belief, Defendants' acts of infringement, dilution and unfair competition complained of herein have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of Delorean Motor Company's rights. In view of the egregious nature of Defendants' actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. Sec. 1117 (a).

### COUNT I: INFRINGEMENT OF REGISTERED MARKS

37. Delorean Motor Company repeats the above allegations as if fully set forth herein.

38. The acts of the Defendants complained of herein constitute infringement of Delorean Motor Company's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. Sec. 1114.

39. Delorean Motor Company has been damaged by Defendants' acts of federal trademark infringement.

40. Defendants' infringement has been willful and in bad faith, making this an exceptional case under 15 U.S.C. Sec. 1117.

## COUNT II: VIOLATION OF LANHAM ACT SECTION 43(a)

41. Delorean Motor Company repeats the above allegations as if fully set forth herein.

42. The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a).

43. Delorean Motor Company has been damaged by Defendants' acts of trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition.

44. Defendants' acts of trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition have been willful and in bad faith, making this an exceptional case under 15 U.S.C. Sec. 1117.

## COUNT III: FEDERAL TRADEMARK DILUTION

45. Delorean Motor Company repeats the above allegations as if fully set forth herein.

46. The acts of Defendants complained of herein constitute dilution by blurring Delorean Motor Company's famous DELOREAN mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. Sec. 1125(c).

47. Defendants willfully intended to trade on the recognition of the famous DELOREAN mark and to harm the reputation of the famous Delorean Motor Company's marks.

48. Delorean Motor Company has been damaged by Defendants' acts of federal trademark dilution.

## COUNT IV: TRADEMARK INFRINGEMENT UNDER THE COMMON LAW OF NEW YORK

49. Delorean Motor Company repeats the above allegations as if fully set forth herein.

50. The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of New York.

### COUNT V: TRADEMARK DILUTION UNDER NEW YORK LAW

51. Delorean Motor Company repeats the above allegations as if fully set forth herein.

52. The acts of Defendants complained of herein constitute trademark dilution in violation of the anti-dilution statute of New York, N.Y. Gen. Bus. Law Sec. 360-1.

### COUNT VI: UNFAIR COMPETITION UNDER THE COMMON LAW OF NEW YORK

53. Delorean Motor Company repeats the above allegations as if fully set forth herein.

54. The acts of Defendants complained of herein constitute unfair competition in violation of the common law of New York.

### COUNT VII: UNJUST ENRICHMENT

55. Delorean Motor Company repeats the above allegations as if fully set forth herein.

56. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Delorean Motor Company's expense.

57. Delorean Motor Company has been damaged by Defendants' acts of unjust enrichment.

### COUNT VIII: DECEPTIVE TRADE PRACTICES UNDER N.Y. GEN. BUS. LAW Sec. 349

58. Delorean Motor Company repeats the above allegations as if fully set forth herein.

59. The acts of Defendants complained of herein constitute a deceptive business act or practice in violation of N.Y. Gen. Bus. Law Sec. 349.

60. Delorean Motor Company has been damaged by Defendants' deceptive business acts or practices.

## **PRAYER**

WHEREFORE, Delorean Motor Company prays that:

a.) Defendants, Defendants' agents, servants, employees, attorneys and all those persons in active concert or participation with them, be preliminarily and permanently enjoined from using the DELOREAN mark, any element thereof, and any other name, mark, or trade dress confusingly similar thereto in any way, on any product, service, advertising, or otherwise.

b.) Defendants, Defendants' agents, servants, employees, attorneys and all those persons in active concert or participation with them, be required to immediately and permanently remove all photos of, and all other references to, the infringing DELOREAN mark from its website and social media, and to destroy all inventory bearing the infringing DELOREAN mark.

c.) Defendants be ordered to file with this Court and to serve upon Delorean Motor Company, within 30 days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

d.) Delorean Motor Company recover all damages it has sustained as a result of Defendants' infringement, dilution, and unfair competition and that such damages be trebled;

e.) An accounting be directed to determine Defendants' profits resulting from Defendants' wrongful activities, and that such profits be paid over to Delorean Motor Company, increased as the Court finds to be just under the circumstances of the case;

f.) Delorean Motor Company recover its reasonable and necessary attorneys' fees;

g.) Delorean Motor Company recover the costs of this action and prejudgment and post-judgment interest; and

h.) Delorean Motor Company recover such other relief as the Court may find appropriate.

## JURY DEMAND

Under Fed. R. Civ. P. 38(b), Delorean Motor Company demands a trial by jury on all issues triable of right by a jury.

Respectfully Submitted,

Date:  February 16, 2018

s/ Abigail Rubinstein
Abigail Rubinstein (AR0689)
WEISS & ARONS LLP
63 South Main Street
Spring Valley, New York, 10977
Email: arubinstein@weissarons.com
        jbaldinger@weissarons.com
        slebovits@weissarons.com
Telephone: 845-362-6100
Fax: 845-362-6111


Daniel J. Noonan
13 Chapin Lane
Austin, Texas 78746
Telephone: 512-228-6523
dan_noonan@austin.rr.com
Texas Bar Number 24102832
Missouri Bar Number 35299

*Attorneys For Plaintiff*
*Delorean Motor Company*